# Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - X

IN RE:

      PATRICK McALLISTER,  Chapter 7

                         Case No:
           Debtor.       5-22486-rdd

- - - - - - - - - - - - - - - - - - - X

NORTHERN WESTCHESTER SURGICAL
ASSOCIATES, LLP,

        Plaintiff,

                    Adversary No:
                    15-08339-rdd

     -against-

PATRICK McALLISTER,

        Defendant.

- - - - - - - - - - - - - - - - - - - X

HELD AT:    Bronson Law Offices
            480 Mamaroneck Avenue
            Harrison, New York 10528
            May 12, 2016
            1:05 p.m.

        Examination before Trial of the
Debtor/Defendant, PATRICK McALLISTER,
pursuant to Court Order, held at the above
time and place before a Notary Public of the
State of New York.

J & L REPORTING SERVICE
of Westchester, Inc.
50 Main Street, Suite 1000
White Plains, New York 10606
(914) 682-1888
Lisa Dobbo, Reporter

A P P E A R A N C E S:

ALBERT A. HATEM, P.C.
Attorney for the Plaintiff
Office & Post Office Address
202 Mamaroneck Avenue, Suite 201
White Plains, New York 10601


BRONSON LAW OFFICES
Attorneys for the Debtor/Defendant
Office & Post Office Address
480 Mamaroneck Avenue
Harrison, New York 10528
BY:  H. BRUCE BRONSON, ESQUIRE

IT IS HEREBY STIPULATED AND
AGREED, by and between the attorneys for the
respective parties herein, that the sealing
and filing of the within deposition be
waived; that such deposition may be signed
and sworn to before any officer authorized
to administer an oath, with the same force
and effect as if signed and sworn to before
the officer before whom said deposition is
taken.

IT IS FURTHER STIPULATED AND
AGREED, that all objections, except as to
form, are reserved to the time of trial.

                    PATRICK McALLISTER, residing at

                    154 North Street, Cortlandt

                    Manor, New York 10561, having

                    been duly sworn by Notary

                    Public, Lisa Dobbo, testified

                    as follows:

EXAMINATION BY MR. HATEM:

        Q.      Please state your full name for

the record.

        A.      Patrick McAllister.

        Q.      Please state your address for

the record.

        A.      154 North Street, Cortlandt

Manor, New York 10561.

        Q.      Good afternoon, Mr. McAllister.

My name is Al Hatem.  I'm the attorney for

Northern Westchester Surgical Associates,

LLP which is a plaintiff in an adversarial

proceeding case commenced in the Bankruptcy

Court in addition to which there's a pending

Supreme Court action County of Westchester

against yourself and Elizabeth McAllister.

        I'm going to be asking you a series

of questions with regards to some payments

that were made by United Health Care/The

Empire Plan.  I'm going to ask you

questions.  If you don't understand a

question that I've asked you, indicate to me

that you don't and I'll try to rephrase it

or through your attorney make the same

request that I rephrase it.  All your

responses have to be verbal so that the

court reporter can take them down and just

shaking laterally can't be taken down so

easily.  With that, let's get started

because I don't want to keep you much longer

than you have to be.

     Your date of birth, please.

A.    9-17-55.

Q.    Are you currently married, sir?

A.    Yes.

Q.    To whom?

A.    Elizabeth McAllister.

Q.    Your wife's maiden name?

A.    Jacob, J-A-C-O-B.

Q.    Is it Jacob or Jacobs?

A.    No S.

Q.    Does your wife currently reside

1

2  with you?

3          A.      No.

4          Q.      Where does she reside?

5          A.      I'm not too sure.

6          Q.      If I gave you an address in

7  Melbourne, Florida, would that ring a bell?

8          A.      Not really, no.

9          Q.      Do you know if your wife owns a

10  piece of property known as 7 Prince Charming

11  Road in Nesconset, New York?

12          A.      I have no knowledge of that.

13          Q.      You have no knowledge.

14  Are you currently involved with a

15  divorce proceeding between yourself and your

16  wife?

17          A.      Yes, I am.

18          Q.      When did that start?

19          A.      It depends on who you ask.  It

20  started -- 2015 is the first time that I was

21  served, early 2015 I was served with papers

22  but I noticed today that the document number

23  on the case is from 2013 so apparently she

24  filed it two years before I was served.

25          Q.      Are you the plaintiff or the

defendant in the matrimonial?

A.    Defendant.

Q.    Your wife does not reside with you, I'm sorry?

A.    No.

Q.    Do you know when she left the marital residence?

A.    Not exactly but I think it was November of '14.

Q.    You and she had been living together at 154 North Street in Cortlandt Manor, New York --

A.    Yes.

Q.    -- up until approximately November of 2014?

A.    Yes.

Q.    How many children do you have from the marriage --

A.    Three.

Q.    -- between yourself and Elizabeth?

THE WITNESS:  I'm sorry.

MR. HATEM:  It's okay, Mr. McAllister.  Please let me finish the

question because I could slip in

something at the very end that your

answer to a yes might change.

THE WITNESS:  Okay.

Q.    You have three children.

Are they all residing with you, sir?

A.    Yes.

Q.    An their ages?

A.    Kathleen is 23.

Q.    Can you spell Kathleen for us?

A.    K-A-T-H-L-E-E-N; Michael is 22

and James is 20.

Q.    As a result of the pending

divorce proceeding, are you currently paying

alimony or maintenance?

A.    I'm paying maintenance.

Q.    How much are you paying, sir?

A.    $2,000 a month.  Roughly it's

2,000 in change, small change.

Q.    Can you tell me the composition

of the 2,000; is it 2,000 in cash, are you

writing checks?

A.    It just stopped coming in my

paycheck somehow.  It was directly through

the payroll. I just never saw it. It goes

directly to her from my payroll office.

      Q.    It's a deduction from your

salary?

      A.    Yes.

      Q.    How often is it deducted; once

a month?

      A.    Every two weeks.

      Q.    Is that how you get paid, every

two weeks?

      A.    Yes.

      Q.    How much is your gross salary

every two weeks?

      THE WITNESS:  With that or

without it?

      MR. HATEM:  Before the --

      A.    I'm not even sure to tell you

the truth; 3,200, I think.  I'm not sure.

      Q.    What is your current net salary

after the deduction for the maintenance?

      A.    $1,000.

      Q.    If I understand you correctly,

you're left with $1,000 every two weeks to

pay your other expenses?

1

2          A.    Yes, sir.

3          Q.    Are you currently employed,

4    sir?

5          A.    Yes, I am.

6          Q.    By whom?

7          A.    The New York State Unified

8    Court System.

9          Q.    How long have you been employed

10   by the New York State Court System?

11         A.    Since '83; 33 years.

12         Q.    1983?

13         A.    Yes, November '83 I started.

14         Q.    How long do you have until

15   retirement?

16         A.    I could retire now.  I have

17   what's required but I'm not supposed to

18   retire until my divorce case is settled

19   according to the --

20         Q.    According to?

21         A.    The judge in the divorce case.

22         Q.    With regards to the alimony

23   payments or maintenance payments that you're

24   paying to your wife of 2,000 a month, is

25   there a court order directing that those

1

2   monies be taken from your salary?

3            A.    Yes.

4            Q.    Do you have a copy of that

5   order?

6            A.    No.

7            MR. HATEM:   If I leave a space

8            in the record, can I get copy of

9            that?

10           THE WITNESS:   I don't know if I

11           even have one.  I'll check.  I have

12           -- you see, I just -- I have a new

13           attorney coming in on that case.  The

14           old attorney was just relieved.  With

15           respect to papers, I don't know what

16           I have.

17           MR. BRONSON:   We're being

18           requested to produce a document so if

19           you have it, if we --

20           THE WITNESS:   If I have it, I

21           will --

22           MR. BRONSON:   -- can get it

23           within reasonableness.

24           Q.    You're saying your attorney is

25   no longer Patrick Bonanno?

1

2          A.    No.

3          Q.    Who is your new attorney, sir?

4          A.    I don't really have one yet.

5          Q.    You're in between?

6          A.    Yes.

7          Q.    What is your job title with the

8   New York Court System?

9          A.    Lieutenant.

10         Q.    How long have you been a

11  lieutenant?

12         A.    12 years.

13         Q.    What is your current salary or

14  what was your annual salary in 2015?

15         A.    88,500.

16         Q.    According to your bankruptcy

17  petition that you filed with the court your

18  salary in 2013 and 2014 was $93,000.

19         Is there a reason why your salary

20  dropped to 88,500?

21         A.    It's the 93 includes some

22  overtime.  The base is 88.

23         Q.    The 83,500 is the base?

24         A.    Yes, 88,500 is the base and

25  then 93 is a little overtime.

Q.    You had no overtime in 2015?

A.    I haven't worked any in quite awhile.

Q.    By choice?

A.    Not really.

MR. HATEM:  Off the record.

(Whereupon, a discussion was held off the record.)

Q.    As a result of your employment with the New York Court System, do you have medical insurance?

A.    Yes, sir.

Q.    With what carrier is the medical insurance?

A.    United Health Care.

Q.    Also known as The Empire Plan?

A.    Yes.

Q.    Who pays the premiums for the medical insurance?

A.    I believe it comes out of my salary.  It's deducted.

Q.    What is it that causes you to believe that, sir?

A.    I just always assumed.  I'd

1
2    have to check a stub but I believe it is.

3            Q.     According to your bankruptcy

4    petition Schedule J there's no deduction for

5    medical premiums for the policy; is that

6    inaccurate?

7            A.     I'm really not sure.  I'd have

8    to check the stub.

9                   MR. BRONSON:  Off the record a

10                  second.

11                  (Whereupon, a discussion was

12                  held off the record.)

13           Q.     The medical insurance that you

14   have with the New York State Court System,

15   does that medical insurance provide coverage

16   for your wife?

17           A.     Yes, it does.

18           Q.     As well as for your children?

19           A.     Yes.

20           Q.     Some or all the children?

21           A.     All.

22           Q.     Are they all eligible, even the

23   22 year old?

24           A.     Yes.

25           Q.     And that's by virtue of being

in college or a full-time student?

      A.    No, my coverage covers them up until they're 26, I believe, if they live at home.

      Q.    Did you receive any medical treatment from September of 2014 to January of 2015, you?

      A.    I believe I was -- I'm really not sure. I might have been in the hospital for a day for a leg problem but --

      Q.    Do you know which hospital it would have been?

      A.    Hudson Valley Hospital Center.

      Q.    Where is that located?

      A.    It's in Cortlandt Manor, New York.

      Q.    Anything else between that period of September of 2014 and January of 2015?

      A.    Not that I can think of, no.

      Q.    Did your wife receive medical treatment from Northern Westchester Surgical in October of 2014?

      A.    I don't know.

Q.    You don't know.

That would have been before she left
the marital residence in November of 2014?

A.    Well, things weren't good and
she had a lot of medical treatment.  I don't
know with who and that's the part of the
question I can't answer that.

Q.    Do you know if Northern
Westchester Surgical presented a claim for
coverage to United Health Care/The Empire
Plan for services they allegedly rendered to
your wife Elizabeth?

A.    I was never notified.

Q.    You were never notified prior
to the procedures or subsequent to the
procedures or at any time?

A.    At any time.

Q.    Do you recall receiving checks
from The Empire Plan in October, November or
December of 2014?

A.    Yes.

Q.    Do you recall how many checks?

A.    No.

Q.    Do you know if the checks were

1

2    made payable to you?

3              A.    I believe they were, yes.

4                    MR. HATEM:  Let's mark these.

5                    (Whereupon, Plaintiff's Exhibit

6              1, Photocopy of Check - last four

7              digits ending 2351, was marked for

8              Identification.)

9                    (Whereupon, Plaintiff's Exhibit

10             2, Photocopy of Check - last four

11             digits ending 7888, was marked for

12             Identification.)

13                   (Whereupon, Plaintiff's Exhibit

14             3, Photocopy of Check - last four

15             digits ending 2781, was marked for

16             Identification.)

17                   (Whereupon, Plaintiff's Exhibit

18             4, Balance Sheet, was marked for

19             Identification.)

20             Q.    Mr. McAllister, I'm going to

21    show you what's been marked as Plaintiff's

22    Exhibit 1 which appears to be The Empire

23    Plan check, last four digits ending 2351.

24             I'll ask you to take a look at that,

25    please, sir.

(Handed)

Q.    By looking at the check, sir,
does that refresh your recollection as
having received that check?

A.    I mean not really but I'm not
denying it.  I don't remember it.

Q.    According to what's been marked
Plaintiff's Exhibit 1 appears to be the face
of a check; is that correct?

A.    Yes.

Q.    And below the face of the check
appears to be your signature; is that your
signature, sir?

A.    Yes, it is.

Q.    The date on the check,
Plaintiff's Exhibit 1 December 22nd, 2014,
does that date refresh your recollection as
to when you may have received this check?

A.    Not really, no.

Q.    Do you recall depositing that
check into your account?

A.    Do I recall doing it, no.  I'm
not denying it but I don't recall it.

Q.    What bank do you bank with,

sir?

     A.    Citibank.

     Q.    That was the bank that you dealt with in 2014?

     A.    Yes, sir.

     Q.    Any other banks, sir?

     A.    No.

     Q.    Do you have a checking account only or is it a checking account, savings account?

     A.    Just checking.

     Q.    Would it be a singular account --

     A.    Yes.

     Q.    -- in your name only?

     A.    Yes.

     Q.    Is that account still opened today?

     A.    Yes, it is.

     Q.    Is that the same account you were using in 2014?

     A.    Yes.

     Q.    Sir, I'm going to show you what's been marked as Plaintiff's Exhibit 2.

I ask you to take a look at it.   It appears

to be a check from The Empire Plan last four

digits 7888.

(Handed)

        Q.     Look it over from top to

bottom.

        A.     Yes, sir.

        Q.     Have you ever seen that check

before today?

        A.     Again, I mean I'm not denying

it but I don't particularly remember it

so --

        MR. HATEM:  All I can do is ask

        you as I phrase the question.

        A.     I'm sure I did but I don't

recall.

        Q.     What is it about Exhibit 2 that

you're sure you did see it?

        A.     It shows a copy of the back

with my signature on it.

        Q.     Do you recall by your

endorsement what you did with that check,

sir?

        A.     No.

Q.    Is it possible you may have
deposited it into your Citibank account?

A.    Yes.

Q.    You wouldn't have gone to check
cashing place?

A.    No.

MR. BRONSON:  You asked if it
was possible.  That's not really a
great question.

MR. HATEM:  Would you like me
to rephrase it?

MR. BRONSON:  Please.

Q.    As you sit here today, Mr.
McAllister, do you recall depositing that
check into your Citibank checking account
that you had in 2014?

A.    Yes.

Q.    Sir, I'm going to show you
what's been marked as Plaintiff's Exhibit 3
which appears to be a check from The Empire
Plan last four digits 2781.

(Handed)

Q.    I ask you to take a look at
that, please.

                    Did you receive that check, sir,

Plaintiff's Exhibit 3?

          A.    I would say yes.

          Q.    That's your signature that

appears below the face of the check?

          A.    Yes.

          Q.    Did you deposit that check into

the Citibank checking account that you

maintained in 2014?

          A.    Yes.

          Q.    To the best of your

recollection, sir, as you sit here today

when you received these checks, did you

receive a document that's known as an EOB,

explanation of benefits?

          A.    I don't recall.

          Q.    Once the funds cleared your

Citibank checking account, sir, did you make

a payment to Northern Westchester Surgical?

          A.    No.

          Q.    Did you have any idea when you

received the checks what the checks were

for?

          A.    I wasn't sure, no.

Q.     Did you contact United Health

Care/The Empire Plan to ascertain what the

checks were issued to you for?

A.     No.

Q.     Were you ever contacted by

Northern Westchester Surgical at or around

the tail end of 2014, early part of 2015

inquiring about checks?

A.     I really don't remember.   I

very well could have been but I don't

recall.

Q.     Do you recall having a

telephone conversation with a Margaret

Cassidy with regards to the three checks

that have been marked as Plaintiff's Exhibit

1, 2 and 3?

A.     Do I recall, no.

Q.     Do you recall having a

conversation with anybody from Northern

Westchester with regards to those three

checks?

A.     I vaguely remember a phone

call.  I don't really remember details of

the conversation.

Q.     Where were you when you
received that phone call?

A.     I don't remember that, either.

Q.     Were you at home?

A.     I really don't know.

Q.     Were you at the race track?

A.     No, I don't go to the race
track.

Q.     Were you at work, sir?

A.     I could have been, I guess.  I
don't know.

(Whereupon, Plaintiff's Exhibit
5, Letter dated 12-8-14, was marked
for Identification.)

(Whereupon, Plaintiff's Exhibit
6, Statement dated 1-16-15, was
marked for Identification.)

Q.     Mr. McAllister, I'm going to
show you what's been marked as Plaintiff's
Exhibit 4.

(Handed)

Q.     I ask you to take a look at
that document.

Have you seen that document before

today, sir?

     A.    Not that I remember.

     Q.    Do you recall if that document
was included with the three checks,
Plaintiff's Exhibit 1, 2 or 3 when the
checks were issued and forwarded to your
address?

     A.    I really don't know.  I don't
remember seeing this before.

     Q.    What is it that you do for the
New York State Court System?

     A.    I'm a lieutenant.

     Q.    What do lieutenants do?

     A.    We supervise court officers and
court officers, sergeants.

     Q.    I'm going to ask you to take a
look at what's been marked as Plaintiff's
Exhibit 5.

               (Handed)

     Q.    You read the document,
Plaintiff's Exhibit 5?

     A.    Yes.

     Q.    Have you seen that document
before today, sir?

1

2          A.    I really don't recall it.

3          Q.    So, you might have?

4          A.    I could have.

5          Q.    After having read that letter,

6     what is that letter asking?

7          A.    It's asking for the payment

8     checks, these checks, I would assume.  It's

9     from the doctor's office.

10         Q.    The document is dated December

11    8th, 2014; correct?

12         A.    Yes, it is.

13         Q.    Do you recall having a

14    telephone conversation with somebody at

15    Northern Westchester Surgical at or around

16    that date?

17         A.    I really don't.

18         Q.    Any of the three checks that

19    have been marked as Plaintiff's Exhibit 1, 2

20    or 3, did you ever issue a check to Northern

21    Westchester Surgical?

22         A.    No.

23         Q.    I'm going to show you what's

24    been marked as Plaintiff's Exhibit 6.

25                    (Handed)

Q.    I ask can you to take a look at that document, sir.

Have you seen Plaintiff's Exhibit 6 before today?

A.    Not that I remember.

Q.    Not that you remember.

Is it possible that you may have?

A.    I really don't remember this. I guess it's possible but I don't remember seeing this before.

Q.    The date on Plaintiff's Exhibit 6 is January 16th, 2015; is it not?

A.    Yes.

Q.    That's after the date that your wife left the marital residence in November of 2014; is that correct?

A.    Yes, it is.

Q.    But it's addressed to 154 North Street in Cortlandt Manor, New York?

A.    Yes.

Q.    That's where you currently live, sir?

A.    Yes.

Q.    As you sit here today, you

don't recall seeing this correspondence?

        A.    No, I don't -- well, no, I

don't.

                MR. HATEM:  Off the record.

                (Whereupon, a discussion was

            held off the record.)

        Q.    Sir, as you sit here today, do

you recall a telephone conversation with a

Margaret Cassidy on December 12th, 2014 at

your place of employment?

        A.    No, I don't.

        Q.    Do you recall speaking to an

individual on December 12th, 2014 where you

made the statement that your wife may have

received the checks, that you were

separated, that she had access to the

mailbox?

        A.    I don't remember saying it.

No, I don't remember.

        Q.    Do you recall saying to an

individual that you worked at the Brooklyn

Supreme Court and that there would be

repercussions if that person continued to

call you?

A.    Once they -- yes, they called
my place of employment.   We're not allowed
to get personal calls so yes I probably said
that.

Q.    Did that individual that you
referenced, did that person indicate that
they were from Northern Westchester
Surgical?

A.    I really don't remember.

Q.    After depositing the checks
into your Citibank account, did you make any
payments to your wife?

A.    No.

Q.    This may sound like a stupid
question, but did you think you won lotto
when you got those three checks, sir?

A.    It was a very bad time.   I
really didn't care where they came from.   I
had other problems with her that cost me
money, so --

Q.    Did you ever inquire as to why
those checks were issued to you?

A.    No.

Q.    Did it occur to you to contact

United Health Care/The Empire Plan to find

out why they would issue you those three

checks?

   A.  I never did, so --

   Q.  Did you tell your wife that you

received those three checks?

   A.  No, i haven't spoken to my wife

at all.

   Q.  With regards to those three

checks?

   A.  With regard to anything.

   Q.  Let me ask you the next logical

question:  What did you do with the money?

   A.  I replaced living room

furniture that my wife had destroyed on the

way out; I bought a used car to replace cars

she wrecked while she was inebriated and I

tried to pay back a few bills that we were

behind on because she had been stealing

money, so --

   Q.  It sounds like from your

response it was in payment of items and

debts that were caused by your wife; is that

correct?

A.      That's what I believe, yes.

MR. HATEM:   You spent it.

THE WITNESS:   That's why I did it.

Q.      Do you have any of that money today, sir?

A.      No, sir.

Q.      Why don't you take a look at Plaintiff's Exhibit 1, 2 and 3 and actually Plaintiff's Exhibit 4.

If I were to tell you the total of those three checks was $17,747.14, does that sound about right --

A.      I guess.

Q.      -- based upon mathematical calculation?

A.      Yes.

Q.      Did you receive any other checks other than the three checks that you have, Plaintiff's Exhibit 1, 2 and 3 from the United Plan?

A.      Not that I remember, no.

Q.      Were any of the three checks that you have in your hand, Plaintiff's

Exhibit 1, 2 or 3, were those checks issued

to you to reimburse you for the one day's

hospitalization that you indicate you may

have had?

       A.    No.

       Q.    They were not?

       A.    No.

       Q.    At any point subsequent to

receiving those checks, did you find out

those checks were issued in payment for

medical treatment rendered to your wife?

       A.    Yes.

       Q.    When for the first time did you

find out that those checks were issued to

you in payment for medical treatment

rendered to your wife?

       A.    I believe I got something in

the mail from your office.

       Q.    Was it a hello, how are you?

       A.    No.

       Q.    What was it, sir?

       A.    It was some -- I'm not sure

what it was.  It was right after I filed

bankruptcy, I believe was the first time I

actually -- I still really don't know what
it was for.  I mean I know it was for
medical expense and I don't remember exactly
when I was notified but it was around the
time of my filing.

     Q.    When you say you received
something from my office, was it a letter?

     A.    I believe so.  I can't -- I'm
really not sure.  I'm sorry.  I think it was
a legal document that came from your office.

     Q.    Summons & Complaint maybe?

     A.    Possibly.

     Q.    Did you try to contact my
office after receiving whatever it is that
you received from my office?

     A.    No.

     Q.    What is it that you did with
whatever you received from my office?

     A.    I probably gave it to my
attorney.

     Q.    The attorney sitting over here
to your right --

     A.    I think so, yes.

     Q.    -- Mr. Bronson?

                    If it was a Summons & Complaint, sir,

            did you ever interpose an Answer?

                    A.      No.

                    Q.      Did anyone on your behalf ever

            interpose an Answer in the Supreme Court

            case?

                    A.      Not that I know of.

                    Q.      If I understood your testimony,

            sir, prior to receiving whatever it is that

            you received from my office, you had no

            knowledge of those three checks that you

            received, Plaintiff's Exhibit 1, 2 and 3

            were issued to you for medical treatment

            that your wife had received?

                    A.      I didn't know, no.

                    Q.      Had you known at the time that

            you received the checks, would you have done

            something differently with those checks?

                    A.      I really can't answer that.  I

            don't know.

                    Q.      You don't know what you would

            have done?

                    A.      Yes.

                    Q.      You may have done the same

thing you indicated you did?

    A.    I just don't know.

    Q.    Had you received checks from your medical insurance company for treatment that you received?

    A.    No, because I always use participating providers. My wife chose to go there and knew that it wouldn't be covered, that we would have to get -- it would be -- they would issue us a check but I believe she was going to take the checks but they came in my name.

    Q.    What is it that causes you to remember that fact pattern?

    A.    That's a long fact pattern consistent with my wife's behavior.

    Q.    Is it your understanding that the services rendered by Northern Westchester Surgical might be termed out of network?

    A.    I really don't know. I'm sure there's people that do provide those services.

    Q.    What is it that caused you to

believe that your wife selected Northern

Westchester Surgical as opposed to something

in the network of The Empire Plan?

      A.    Because when I got the

paperwork from you that was the name of the

people that you were representing, so I

didn't know where she went at first.  I knew

it was somebody not participating but I

didn't know who.

      Q.    How is it you knew they were

not participating?

      A.    Because these checks would have

went directly to a participating provider.

I never would have got them.

      Q.    Had you ever received

reimbursement from The Empire Plan for

treatments that you received that were not

covered under the plan?

      A.    Probably, but it's a long time.

I don't remember it.

      Q.    If you did, what would you do

with those checks?

      A.    My experience is most times we

had to pay the bill before we left.  The

check was to reimburse me.

      Q.    You never had an occasion where the payment came to you and then you would deposit it and then pay the provider?

      A.    Not that I remember.

      MR. MATEM:  Why don't you give me two minutes because I think I might be done.

      Q.    Going back to your matrimonial action, is it your intention to retain a new attorney?

      A.    Yes.

      Q.    What has happened to the files that were maintained by Mr. Bonanno?

      A.    They're in my house.

      Q.    You have them all?

      A.    Well, I have what he gave me. He said that's all he had.

      Q.    How long was he your attorney?

      A.    From the date of filing as far as I know was sometime early in 2015, like January, February.  Although the index number says 2013.  I don't know what that's all about.

Q.    You had an appearance this morning, did you not, sir?

A.    Yes, I did.

Q.    Did you appear by yourself?

A.    Yes, I did.

Q.    The matrimonial order or the order from the court stating that you had to pay your wife $2,000 a month, was that prior to today?

A.    Yes, like over a year.

Q.    It's been over a year?

A.    I believe so.

Q.    Those payments were court ordered?

A.    Yes.

Q.    When did they start?

A.    I'm really not sure but it was early last year in 2015.

Q.    Sometime in the first quarter of 2015?

A.    I believe so.

Q.    The used vehicle that you testified that you purchased, is that registered in your name?

1

2          A.    Yes, sir.

3          Q.    Do you recall when you

4     purchased the vehicle?

5          A.    It wasn't long after those

6     checks were issued.  I can tell you that.

7          Q.    Early part of 2015?

8          A.    Yes.

9          Q.    What did you purchase, sir?

10              THE WITNESS:  I'm sorry?

11         Q.    What did you purchase?

12              THE WITNESS:  What type of

13    vehicle?

14              MR. HATEM:  Yes.

15         A.    A 2006 Dodge Caravan.

16         Q.    Of these three checks,

17    Plaintiff's Exhibit 1, 2 and 3, did you use

18    any of that money to satisfy a judgement

19    that Capital One had obtained against you?

20         A.    No, I didn't.

21              MR. HATEM:  I think I'm done.

22    Thank you, Mr. McAllister.

23              (Whereupon this examination

24    concluded at 1:48 p.m.)

25

                                    _____
                                    PATRICK McALLISTER

Subscribed and sworn to

before me this_    __day

of____  _____, 2016.


    _____
    Notary Public

C E R T I F I C A T E

STATE OF NEW YORK    )
                     )ss.:
COUNTY OF WESTCHESTER)


       I, LISA DOBBO, a Shorthand
Reporter and Notary Public within and for
the State of New York, do hereby certify:


       That PATRICK McALLISTER, the
witness whose deposition is hereinbefore set
forth, was duly sworn by me, and that such
deposition is a true record of the testimony
given by the witness.


       I further certify that I am not
related to any of the parties to this action
by blood or marriage, and that I am in no
way interested in the outcome of this
matter.


       IN WITNESS WHEREOF, I have
hereunto set my hand this 18th day of May,
2016.


             LISA DOBBO
          SHORTHAND REPORTER

EXHIBIT PAGE

| Plaintiff's Exhibits | Description | Page Number |
|---|---|---|
| 1 | Photocopy of Check – Last four digits ending 2351 | 17 |
| 2 | Photocopy of Check – Last four digits ending 7888 | 17 |
| 3 | Photocopy of Check – Last four digits ending 2781 | 17 |
| 4 | Balance sheet | 17 |
| 5 | Letter dated 12-8-14 | 24 |
| 6 | Statement dated 1-16-15 | 24 |

\* \* \*

REQUEST

| | |
|---|---|
| Page 11 | Production of copy of court order directing monies to be taken from Mr. McAllister's salary |

ERRATA SHEET

The following corrections, additions
or deletions were noted on the transcript of
the testimony which 1 gave in the
above-captioned matter held on 5/12/16:


Page___ _Line____ SHOULD READ:___ ____ ____ ___

REASON FOR CHANGE:_ ____ ____ ____ ____ ____

Page ____Line_ __SHOULD READ: ____ ____ ____ .

REASON FOR CHANGE:___ ____ ____ ____ ____ __

Page___ _Line____ SHOULD READ:___ ____ ____ __

REASON FOR CHANGE:_ ____ ____ ____ ____ ____

Page_ __Line___ SHOULD READ:_ ____ ____ ____

REASON FOR CHANGE: ____ ____ ____ ____ ____ .

Page____ Line ___SHOULD READ:____ ____ ____ __

REASON FOR CHANGE:__ ____ ____ ____ ____ ___

Page_ __Line___ SHOULD READ:__ ____ ____ ____

REASON FOR CHANGE: ____ ____ ____ ____ ____

Page____ Line ___SHOULD READ:____ ____ ____ _

REASON FOR CHANGE:__ ____ ____ ____ ____ ___


                              ___ _____ _____
                           PATRICK McALLISTER

Subscribed and sworn to
before me this ____ day
of_ ____ ____ __, 2016.


_ ____ ____ ____ ____ .
    Notary Public

**$**

$1,000 - 9:22, 24
$17,747.14 - 31:13
$2,000 - 8:19, 28:5
$93,000 - 12:18

'14 - 7:10
'83 - 10:15, 18

**1**

1 - 1:05, 22; 18:5, 17; 28:17; 23:5; 26:19, 31:10, 21, 32:2; 34:13; 30:17; 42:7
1-16-15 - 24:17, 42:15
1000 - 1:23
10528 - 1:16; 2:11
10567 - 4:4, 16
10601 - 9:9
10606 - 1:24
11 - 42:20
12 - 1:17; 12:12
12-8-14 - 24:14; 42:14
12th - 28:13, 14
15.08339-rdd - 1:11
154 - 4:5; 14; 7:12; 7:15
16th - 27:13
17 - 42:7, 9, 11, 13
18th - 41:17
1983 - 10:13
1:05 - 1:17
146 - 30:21

**2**

2 - 17:10, 19:25, 20:18, 25:17 25:6 28:19 31 20, 31:22?
31:13; 39:17; 42:9
2,000 - 8:20, 22; 10:24
20 - 9:13
2008 - 30:15
201 - 2:8
2013 - 6:23; 12:18, 37:24
2014 - 7:16; 12:18; 16:7, 19, 24; 15:4, 21; 16:17; 19:5, 22; 27:17; 22:10; 23:9; 26:11; 27:17, 28:10, 14
2015 - 6:20; 32:14; 15:2; 15:8, 20; 23:8; 27:18; 57:22; 33:19, 39, 38:?
2016 - 7:14; 40:8; 41:17; 43:23
202 - 2:6
22 - 8:12; 14:23
22nd - 28:17
23 - 9:10
2351 - 17:7, 23; 42:8
24 - 42:14
26 - 15:4
2781 - 17:15; 21:22; 42:12

**3**

3 - 17:14, 21:20, 22:3; 28:17; 25:6, 26:20, 31:10, 21, 32:2 34:13; 39:17; 42:11
3,200 - 9:19
33 - 30:15

**4**

4 - 17:18; 24:21; 31:11; 42:13
480 - 1:16; 2:11

**5**

5 - 24:14; 25:19, 22; 42:14
5-22469-rdd - 1:6
5/12/16 - 42:4
50 - 1:23

**6**

6 - 24:17; 20:24; 27:4, 10; 42:15
682-1888 - 1:24

**7**

7 - 1:5; 6:10
7888 - 17:11; 20:4, 42:10

**8**

$3,500 - 12:25
86 - 12:22
88,500 - 12:16, 20, 24
8th - 28:11

**9**

9-17-55 - 5:16
914 - 1:24
93 - 12:21, 25

**A**

above-captioned - 43:4
access - 28:17
according - 13:10; 12:16; 14:3; 18:3
account - 18:22; 19:9-11, 14, 19, 21; 21:3, 40 22:5, 18; 28:12
action - 4:23; 37:11; 41:13
addition - 4.21
additions - 45:2
Address - 2:11, 31
address - 4:12; 8:6; 25:0
addressed - 27:18
administer - 5:12
adversarial - 4:19
adversary - 1:10
afternoon - 4:26
ages - 9:6
AGREED - 3.7, 18
AI - 4:17
aLBERT - 2:5
alimony - 8:15; 10:22
allegedly - 16:12
allowed - 39:2
AND - 3:5, 17
annual - 12:14
answer - 9:4; 13:8, 34:20
Answer - 3:13, 5
appear - 38:6
appearance - 38.2
appearing - 28:3
Associates - 4:18
ASSOCIATES 1:9
assume - 20:9
assumed - 15:25
AT - 1:15
attorney - 4:10 5:2 31:13, 24; 12:3; 33:21; 37:12, 30
Attorney - 2:5
Attorneys - 2:10
attorneys - 3:7
authorized - 3:11

Avenue - 1:16; 2:6, 11
awhile - 13:4

**B**

bad - 29:18
Balance - 17:16; 42:13
bank - 18:25, 19:4
BANKRUPTCY - 1:2
Bankruptcy - 4:26
bankruptcy - 12:18 14:3; 32:25
banks - 19:7
base - 12:22
based - 35:16
behalf - 34:6
behavior - 33:17
behind - 20:20
bell - 6:?
below - 38:12, 22:5
benefits - 22:16
best - 27:12
between - 3:7, 8:15; 7:21; 12:5; 15:18
bill - 30:25
bills - 30:19
birth - 5:15
blond - 41:24
Bonanno - 11:25
bonanna - 37:15
bottom - 20:7
bought - 30:17
Bronson - 1:15; 33:25
BRONSON - 2:9
BRONSON - 2:12; 11:17, 22; 14:3; 21:8, 18
Brooklyn - 28:22
BRUCE - 2:12
BY - 2:12; 4:8

**C**

calculator - 31:17
Capital - 30:19
captioned - 43:4
car - 30:17
Caravan - 29:19
care - 29:19
Caro - 13:16
Care/The - 4:2; 15:11; 23:3; 30:2
carrier - 13:14
cars - 30:17
case - 4.20 6:23; 12:18, 23; 1:13; 34:7
Case - 1:6
cash - 8:20
cashing - 21:8
Cassidy - 25:16; 28:10
caused - 30:24; 35:16
causes - 13:23; 35:14
Center - 19:14
certify - 4:18, 13
chance - 8:4, 20
CHANGE - 43:7, 9, 11, 13, 15, 17, 19
Chapter - 1:5
Charming - 6:18
check - 11:11, 14-2, 9; 17:23; 18:3, 5, 16; 19; 20, 21, 22; 20:3, 6, 23; 21:5, 19, 22; 22:2, 5, 6; 26:25; 35:11; 37:2
Check - 17:6, 10, 14; 42:7, 9 11
checking - 19:1, 12; 21:16; 22:6, 19

checks - 6.23, 16:19, 23, 25; 22:14 23:23:4 9, 15, 22; 25:5, 7, 28:8, 16, 28:18; 29:11, 17, 23, 30:4, 7, 11, 34:13, 20, 21, 32:2, 10-11, 15; 34:13, 18-19; 35:4, 19; 36:13, 23; 39:6, 18
children - 7:18; 9:6; 14:19, 20
choice - 13:5
chose - 36:8
citibank - 19:3
Citibank - 21:3, 18, 21:9, 19; 29:12
claim - 15:10
cleared - 22:18
college - 15:2
coming - 8:24; 11:13
commenced - 4:20
company - 35:9
Complaint - 30:12; 34:2
composition - 8.21
concluded - 39:24
consistent - 30:17
contact - 23:2, 29:25; 33:14
contacted - 23:8
continued - 30:24
conversation - 23:14, 20, 25; 25:14, 29:8
copy - 11:4, 6; 20:20; 42:20
correct - 19:10; 20:11; 27:17; 39:25
corrections - 43:2
correctly - 9:23
correspondence - 23:?
Cortlandt - 4:3, 14; 7:12, 15:16, 37:20
cost - 29:20
County 4.22
COUNTY - 41:5
COURT - 1:2
court - 5:10; 10:25; 12:17; 25:15; 39:8, 14; 40:20
Court - 1:20; 4:21; 10:8, 10, 12:8; 13:11, 14:14, 26 12 28:23; 34:6
coverage - 14:15; 15:2; 18:11
covered - 50:16; 35:19
covers - 15:9
current - 8:20, 12:13

**D**

date - 5:15, 18 15:18; 23:16; 27:12, 15; 37:21
dated - 24:14, 17; 25:15; 42:14
day's - 32:3
dealt - 19:5
Debtor - 1:5
Debtor/Defendant - 1:19; 2:10
debts - 30:24
December - 18:21; 19:17; 30:19; 39:10, 11
deducted - 19:7; 13:22
deduction - 9:4, 21 34:4
Defendant - 1:13
defendant - ?2
deletions - 43:2
denying - 18:7, 24, 20:11
deposit - 22:9; 3:25
deposited 21:3
depositing - 15:21; 21:15, 25:11
deposition - 3:9, 14; 41:10
Description - 42:5
destroyed - 30:16
details - 23:24
differently - 34:13

digits - 17:7, 11, 15, 23; 20:4 21:22; 42:7, 9, 11
Directing - 10:25; 42:23
directly - 8:25; 9:3; 35:14
discussion - 13:9; 14:11; 28:5
DISTRICT - 1:2
divorce - 8:15; 8:15; 10:16, 21
Dobbo - 4:25; 4:6
DOBBO - 41:7, 21
doctor's - 28:9
document - 6:22; 11:18; 22:15; 24:24; 32:4, 24, 24; 26:10; 27:3; 32:11
Dodge - 30:16
done - 34:18, 20, 25; 37:9 39:21
down - 9:10
dropped - 12:20
duly - 4:6; 41:10

**E**

early - 8:21; 23:9; 37:22; 34:19; 39:7
easily - 9:12
effect - 3:13
either 24:4
eligible - 14:22
Elizabeth - 4:?9; 6:20; 7:22; 41:21
Empire - 5:3; 13:17; 16:11, 20, 17:22, 20:3, 21:21; 23:3; 30:2; 35:4, 17
employed - 10:3, 9
employment - 13:10; 28:11; 28:3
end - 8:3; 23:8
ending - 17:7, 11, 15, 23, 42:7, 9, 11
endorsement - 20:23
EOB 22:15
ERRATA - 43:2
ESQUIRE - 2:12
exactly - 7:9; 33:4
examination - 39 23
Examination - 4:19
EXAMINATION - 4:8
except 5:18
EXHIBIT - 42:3
Exhibit - 17:6, 9, 13, 17, 22; 18:5, 17; 19:25; 23:13; 21:22; 22:5; 23:18; 24:13, 16, 21; 25:6, 19, 22; 28:19, 24; 27:4, 12, 31:10, 21; 32:2; 34:13, 39:17
Exhibits - 42:5
expense - 33:4
expenses - 9:25
experience - 36:24
explanation - 32:16

**F**

face - 18:3 12:225
fact - 35:15
far - 37:21
February - 37:24
few - 30:19
filed - 6:24; 12:17; 32:24
files - 37:14
filing - 5:9; 33:8, 37:21
finish - 7:23
first - 5:20; 32:14 20; 36:8; 39:20
Florida - 8:7
following - 43:7
follows - 4:7

45

FOR - 4:7, 9, 11, 13, 15, 17, 19
force - 3:12
form - 3:10
forth - 4:10
forwarded - 2:7
four - 17:6, 40, 24, 23; 20:3; 21:22; 42:7, 9, 11
full - 4:9, 15:2
full-time - 16:2
funds - 27:18
furniture - 30:16
FURTHER - 3:17

G

given - 41:11
great - 21:10
gross - 9:13
gross - 24:11; 27:10; 31:16

H

hand - 31:16, 41:17
handed - 18:2; 20:5; 21:23; 24:22; 25:20; 26:25
Harrison - 1:16; 2:11
HARLEM - 2:5; 4:8; 7:24; 9:17; 11:7; 13:7; 17:4; 20:14, 21:11, 29:6, 31:3; 37:7; 39:14, 21
Harlem - 4:17
Health - 5:2; 13:18; 16:11; 23:7; 50:2
HELD - 1:15
held - 1:20; 13:9; 14:12, 26:7; 48:4
hello - 32:20
hereby - 41:8
HEREBY - 3:6
herein - 3:8
hereinbefore - 41:10
hereunto - 41:17
home - 15:5; 24:5
hospital - 15:10, 12
Hospital - 15:14
hospitalization - 32:4
house - 30:15
Hudson - 15:14

I

idea - 22:22
identification - 17:8, 12 16, 18; 24:15 18
IN - 1:4; 41:16
inaccurate - 14:8
Inc - 1:23
included - 26:5
inferred - 12:21
Index - 37:23
indicate - 5:6; 29:7; 30:4
indicated - 36:2
individual - 28:14, 22; 29:5
inebriated - 30:18
inquire - 29:22
Inquiring - 5:9
insurance - 13:12, 16, 20, 14:15, 15; 33:5
intention - 5:21:1
interested - 41:14
interpose - 8:13, 5
involved - 6:4:4
IS - 3:8, 17
issue - 28:20; 30:3; 35:11
issued - 23:4; 26:7; 29:21; 33:2, 11, 19; 34:14; 39:5

IT - 3:6, 17
items - 30:23

J

J-A-C-O-B - 5:22
Jacob - 5:22
Jacobs - 6:3
James - 6:13
January - 19:7, 19, 27:13; 37:22
job - 12:7
judge - 10:21
judgement - 39:18

K

Kathleen - 8:13
Kathleen - 8:11
KATHLEEN - 8:12
keep - 5:13
knowledge - 6:12; 34:12
known - 8:10, 13:17; 27:15; 34:17

L

Lost - 42:11
Inst - 17:6, 10, 14, 13 20:3; 21:22, 28:19; 42:7, 9
laterally - 5:11
LAW - 2:9
Law - 1:15
leave - 4:17
left - 7:7 9:24; 15:3; 27:18, 56:23
leg - 15:11
legal - 33:11
Letter - 24:14; 42:14
letter - 28:6; 5:8
Lieutenant - (20:9, 11); 25:13
lieutenants - 25:14
LISA - 4:17, 21
Lisa - 1:20; 4:6
live - 16:4; 27:23
living - 7:11; 30:16
LLP - 1:9; 4:19
located - 15:15
logical - 30:13
look - 17:24; 20:3, 6; 21:24; 24:23, 25:18; 27:7 31:5
looking - 19:3
lotto - 29:15

M

maiden - 6:21
mail - 40:19
mailbox - 28:19
Main - 1:23
maintained - 22:10; 30:15
maintenance - 31:19 5:21, 10:23
Mamaroneck - 1:18; 2:5, 11
Manor - 4:4, 16; 16:19; 27:23
manor - 7:13
Margaret - 33:14, 38:10
marital - 7:8; 16:6; 22:10
mark - 17:4
marked - 17:7, 11, 15, 18, 21, 16:8; 10:5; 21:22; 23:19, 24:14, 18, 20; 25:19; 33:19, 24
marriage - 17:8; 41:14
married - 4:17
mathematical - 51:16

matrimonial - 7:7; 37:10, 38:7
matter - 41:15; 43:4
McAllister - 1:5, 12, 19; 4:2 11, 16, 23; 5:10, 7:25; 17:23; 21:19; 24:19; 39:22; 40:4; 41:9, 43:21
McAllister's - 42:21
mean - 18:6, 20:11; 23:3
medical - 13:12, 15, 20; 14:5 13, 15; 15:6, 22 16:3, 33:12, 16; 33:4; 34:14; 35:5
Melbourne - 6:7
Michael - 9:12
might - 8:4, 18:10 20:3, 35:22; 37:9
minutes - 3:16
money - 28:21; 30:14, 21; 31:8, 32:14
monies - 12:3; 42:20
month - 9:19; 9:8; 10:24; 38:9
morning - 38:3
most - 38:24
MR - 4:9; 7:24; 15:7, 17, 22; 12:7; 14:9; 17:4; 20:14; 21:5, 11, 13; 28:5; 31:5; 37:7; 39:21

N

name - 4:9, 17; 6:20; 16:18 38:19; 38:6, 38:25
Nessonnet - 6:11
net - 9:20
network - 59:21; 30:4
never - 9:2; 19:14; 30:6; 36:10; 37:3
NFW - 1:2, 41:4
new - 15:12; 17:3; 37:11
New - 1:19, 21, 24; 2:7, 11; 4:4 15, 6:11; 7:13; 10:7, 10; 12:9; 13:11; 14:14; 16:16; 25:12; 27:20; 41:8
next - 30:5
North - 4:3, 14, 7:12; 27:19
NORTHERN - 1:8
Northern - 4:16, 15:23; 16:9; 22:20; 23:7, 20 26:15, 20, 22:8; 30:19; 36:2
Notary - 1:20; 4:5 40:10; 41:7; 42:24
noted - 43:3
noticed - 8:22
notified - 10:14, 33:5
November - 7:10, 11; 10:13, 15:4, 20; 27:16
Number - 4:5
number - 6:22; 57:24

O

oath - 3:12
objections - 8:18
obtained - 38:19
occasion - 37:3
occur - 29:25
October - 19:24; 16:25
OF - 1:2; 41:4
office - 9:3; 28:14; 32:19, 33:8 11, 15 16, 18; 34:11
Office - 2:6, 10
officer - 3:11, 14
officers - 26:15
Offices - 1:15
OFFICES - 2:5
often - 6:7
old - 11:14, 14:23
once - 9:7; 22:16; 29:2
One - 32:19
one - 11:11; 12:4; 42:23

opened - 13:18
opposed - 36:3
Order - 1:20
order - 10:25; 11:5; 38:7, 42:21
ordered - 38:15
outcome - 41:14
overtime - 12:22, 25; 13:2
owes - 5:9

P

P.C. - 2:5
p.m - 1:17; 39:24
PAGE - 42:3
Page - 42:9
page - 42:20
Page        Line
SHOULD - 43:6, 8, 10, 12, 14, 16, 18
paid - 9:10
papers - 6:21; 11:15
paperwork - 36:6
part - 16:7; 23:8; 39:7
participating - 35:9, 36:9, 12, 14
particularly - 30:12
parties - 3:8; 41:13
Patrick - 4:11; 11:25
PATRICK - 1:5, 12, 19; 4:2; 40:4; 41:6; 43:21
pattern - 35:11
pay - 9:25; 32:19, 38:25; 37:6; 38:9
payable - 17:2
paycheck - 8:25
paying - 8:15, 17:16; 10:24
payment - 22:20; 26:7, 30:23; 32:10, 12, 37:4
payments - 4:25, 10:23; 21:13; 38:14
payroll - 9:2
pays - 13:21
pending - 4:21, 8:14
people - 35:23, 36:7
period - 9:19
person - 28:24; 29:7
personal - 29:4
petition - 12:17; 14:4
phone - 28:23; 24:3
Photocopy - 17:6, 10, 14; 42:7, 9, 11
phrase - 30:15
pince - 8:10
place - 1:20; 27:10; 30:11, 28:5
Plains - 24:4; 2:7
plaintiff - 1:10, 4:19; 6:25
Plaintiff - 2:5
Plaintiffs - 17:6, 9, 13, 17, 21; 18:9, 1/2 19:25, 21:20; 22:9; 23:18; 24:13, 15, 22; 27:6, 16, 22; 28:18, 24; 31:4, 12, 31:10, 21, 25; 34:13; 39:17, 42:5
plan - 36:19
Plan - 9:3; 13:17; 16:12, 20; 17:22, 20:3; 21:22, 23:3, 30:22; 31:22; 36:4, 17
point - 32:9
policy - 14:6
possible - 21:7, 9; 27:6, 10
possibly - 40:13
Prel - 2:9, 10
premiums - 13:16; 14:5
prescribed - 8:10
Prince - 8:10
problem - 13:11
problems - 29:20
procedures - 15:16

proceeding - 4:20; 6:10; 8:15
produce - 11:18
Production - 42:23
properly - 18:10
provide - 14:16; 36:23
provider - 36:14; 37:6
providers - 39:8
Public - 1:20, 4:6; 40:10; 41:7, 42:24
purchase - 30:9, 11
purchased - 36:24; 30:4
pursuant - 1:20

Q

quarter - 38:20
questions - 4:26; 5:4
quite - 13:3

R

race - 24:7
RE - 1:4
READ - 43:6, 8, 10, 12, 14, 16, 18
read - 25:21; 30:5
really - 8:6; 12:4; 13:7; 14:7; 15:9; 19:5  20, 21:8; 23:10, 24, 24:6; 25:9, 28:2, 1/ 27:9; 29:10, 19, 33:2; 40 04:20; 35:22; 38:18
reason - 12:19
REASON - 4:7, 9, 11, 13, 15, 17, 19
reasonableness - 17:23
receive - 15:6, 7/7; 22:2 15; 31:19
received - 16:5, 19; 22:14 23 24:5; 28:18 30 7; 33:7, 14, 19; 34:11, 13, 15, 18; 39:4, 6, 39:15, 18
receiving - 16:12; 32:16; 33:15, 34:10
recollection - 18:4, 18; 22:13
record - 4:10, 13, 11:8; 13:7, 9; 14:9, 12; 28:5, 7; 41:11
referenced - 29:7
refresh - 18:4, 18
regard - 30:12
regards - 4:25; 10:22; 33:15, 21; 36:10
registered - 38:25
reimburse - 32:3; 37:2
reimbursement - 38:17
related - 41:13
relieved - 11:2
remember - 18:7; 20:12; 23:10, 23:24, 24:4; 25:3, 10; 27:6, 9:10; 28:19; 29:10; 21:25: 33:4; 35:15; 36:21; 3/6
reschued - 15:12, 32:12, 17; 35:19
repercussions - 28:24
rephrase - 5:6, 8; 21:10
replace - 30:17
replaced - 30:15
Reporter - 1:25; 4:17
reporter - 8:10
REPORTER - 41:22
REPORTING - 1:22
representing - 30:7
REQUEST - 42:18
request - 5:8
requested - 11:18
required - 10:17
reserved - 3:19
reside - 6:20; 6:4, 7:4

residence - 7:8; 16:4; 27:16
residing - 4:2; 5:7
respect - 11:15
respective - 3:5
response - 32:23
responses - 5:9
result - 8:14; 13:13
retain - 37:11
retire - 10:16, 18
retirement - 10:15
ring - 8:7
Road - 6:11
room - 30:15
roughly - u:19

## S

salary - 6:6, 13, 20; 11:2;
    12:13, 18-19; 13:22; 22:21
satisfy - 29.18
savings - 10:10
saw - 9:2
Schedule - 14.4
sealing - 3:8
second - 14:10
see - 11:12, 20:19
seeing - 26:16; 27:11; 28:2
selected - 35:3
separated - 28.17
September - 15.7, 19
sergeants - 26:16
series - 4.24
served - 5:21, 24
SERVICE - 1:22
services - 16:12; 35:10, 24
set - 41.15, 17
settled - 10:13
shaking - 8:15
sheet - 42:13
Sheet - 17.18
SHEET - 43.2
Shorthand - 41:7
SHORTHAND - 41:22
show - 1:21; 19:24; 21:19,
    24:20; 26.23
shows - 20:20
signature - 18:13; 20:21; 22:5
signed - 3:10, 13
singular - 19:19
sit - 21:14; 22:13; 27:25; 28:9
sitting - 33:22
slip - 8:2
small - 8.20
sometimes - 37:22; 38:20
sorry - 7:5, 20; 33:16; 38:19
sound - 28:15; 31.14
sounds - 30:22
SOUTHERN - 1.2
space - 1:17
speaking - 38:15
spell - 8:11
spent - 31:5
spoken - 32:8
ss - 41.4
start - 8:18; 36:17
started - 8:19; 9:20; 10:13
State - 1:21; 10:7, 10; 14:14;
    26.12, 41.8
STATE - 41:4
state - 4:9, 12
Statement - 24:17; 42:15
statement - 26 16
STATES - 1:2
staling - 30:8
stealing - 30:20

still - 16.19; 33.2
STIPULATED - 3:6, 17
stopped - 8:24
Street - 1:23, 4.3, 14; 7:14;
    27.20
stub - 14:2, 8
student - 15:9
stupid - 29.15
Subscribed - 42:6; 43:22
subsequent - 16:19; 30:9
Suite - 1:23, 2.6
summons - 33:12
Summons - 34:2
supervise - 25.15
supposed - 10:17
Supreme - 4:22; 28:23; 34:6
SURGICAL - 5:8
Surgical - 4:18; 15:23; 18:10;
    22:20; 23:7; 26:15, 21, 29.6,
    35:20; 36:3
sworn - 3:11, 13, 4.5; 40.6;
    41:10, 43.22
System - 10 8, 10, 12:8; 13:11;
    14:14; 35:17

## I

tail 23:6
telephone - 23.14, 26.14; 28:5
termed - 36:20
testified - 4:6; 38:24
testimony - 34:9; 41:11; 43:8
THE - 7:23; 8.5; 9:15; 11:10,
    20, 31:4; 39:16, 18
this_____ day - 42:7; 43:22
three - 7:20; 8.6, 23:15, 21;
    25.5, 26.18; 29:17; 30:9, 7,
    10; 31:13, 25, 24, 34.12,
    36:16
title - 12:7
turkey - 6:22; 12:19; 22:10;
    21:14, 22.23, 25 2, 25; 27.5,
    24; 28:5; 31:7; 33:10
together - 7:12
top - 20:6
total 31:12
track - 24.7, 9
transcript - 43:8
treatment - 11:7, 23; 16:6;
    32:12, 16; 34:14; 35:5
treatments - 36:18
trial - 3:15
Trial - 4 19
tried - 30:19
true - 41:11
truth 9:19
try - 1:6; 33:14
two - 9:24; 9:9 11, 14, 24; 57:8
type 39.12

## U

under - 08:19
understood - 34:9
Unified - 10:7
UNITED - 1.2
United - 5:2; 13:16; 15.11,
    23:2; 30.2, 31.22
up - 7.15, 15:3

## V

vaguely - 23:23
Valley - 15:14
vehicle - 38:22; 39:4, 13
verbal - 5:9

virtue - 14:25

## W

waived - 3.10
weeks - 9.9, 11, 14, 24
WESTCHESTER - 1:6; 41.5
Westchester - 5:23; 4:16, 22;
    15:23; 16:10; 22:20; 23:7, 21;
    28:15, 21; 29:5; 35:20; 36:3
WHEREOF - 4:16
White - 1.24, 2.7
wife - 8:20; 9:9, 16, 7:4; 10.24,
    14:16; 16:22; 16:13; 27:14;
    28:16; 29:18; 30:6, 5, 15, 24,
    32.12, 17, 34:16; 36:8; 36:2;
    38.9
wife's 5.21; 35:17
witness - 41:10
WITNESS - 7:23; 8.5; 9:15,
    11:10, 20; 31.4; 39:16, 12;
    41:16
won - 28:16
wrecked - 39:18
writing - 8.23

## Y

year - 14:23; 38:11, 19
years - 6.24, 10:11; 12:22
YORK - 1:2; 41.4
York - 1:18, 21, 24; 2:7, 11; 4:4,
    15; 6:11; 7.15, 10.7, 10; 12:8;
    13:11; 14:14; 15:1; 25:12;
    27.20, 41.8
yourself - 4:23; 6:16, 7:23; 36:5